AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of  New Mexico

| | |
|---|---|
| United States of America<br>v.<br><br>LEONARD DODGE<br>*Defendant(s)* | Case No. 16-MJ-1457 |

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

APR 07 2016

MATTHEW J. DYKMAN
CLERK

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  02/01/2016  in the county of  San Juan  in the
District of  New Mexico , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, USC 1111(a) | Second Degree Murder |
| Title 18, USC 1153 | Crime on Indian Reservation |

This criminal complaint is based on these facts:
see attached affidavit

☒ Continued on the attached sheet.

*Complainant's signature*

Lance Roundy, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 7, 2016

*Judge's signature*

City and state:  Farmington, NM

**B. Paul Briones, US Magistrate Judge**
*Printed name and title*

KN/AUSA

## NEW MEXICO

## ALBUQUERQUE, NEW MEXICO

State of New Mexico )

County of San Juan )

### AFFIDAVIT

I, Lance Roundy being duly sworn, hereby, depose and state as follows:

1. I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and have been employed in that capacity since September 2008. I am currently assigned to the Albuquerque Division of the FBI, and have primary investigative responsibility in violent crimes occurring in Indian Country such as robbery, aggravated assaults, and murder.

2. The information set forth in this affidavit has been derived from an investigation conducted by SA Lance Roundy, Farmington Resident Agency of the FBI and Criminal Investigator (CI) Marc Scott of the Navajo Department of Criminal Investigations.

3. On February 3, 2016, CI Marc Scott was contacted by the Navajo Police Dispatch and notified of a dead body located approximately 1.5 miles west of mile marker 96 on US Highway 491 just north of Shiprock, New Mexico within the exterior boundaries of the Navajo Nation Indian Reservation. CI Scott was advised that the tissue of the upper torso of the body was missing, and that the body showed signs of being devoured by animals. CI Scott arrived on scene and observed the body described to him by the Dispatch personnel lying near the front entrance of a white residence, and noted that the upper torso and head were badly damaged and clothes were covering the lower portion of the body.

4. CI Scott interviewed an individual (referred to herein as "CD"), identifying herself as the caretaker of an elderly male, Chee Yazzie (referred to herein as "Yazzie"). CD said that Yazzie lived alone in the white residence where the body was found. CD told CI Scott that she discovered the body earlier that afternoon while conducting a welfare check on Yazzie and recognized the body to have similar features as Yazzie and the clothing to be that of Yazzie. CD informed CI Scott that on Monday, February 1, 2016, CD gave Yazzie a ride into Farmington for groceries and upon return, at approximately 5:30 PM, CD dropped Yazzie off at his residence and noticed that LEONARD DODGE, (referred to herein as "DODGE"), Yazzie's nephew, was also at the residence. CD left Yazzie with DODGE and did not visit Yazzie again until she attempted to make contact with him on February 3, 2016, when she discovered the body.

5. While on scene, CI Scott, noticed that the body had a severed spine just below the base of the skull, and that the body and clothing appeared to have marks consistent with burning. Additionally, CI Scott noticed that a wood handled ax was lying in the front door jamb of the white residence and that the ax was lying in a red substance consistent with blood. A short time later, SA Roundy arrived on scene and observed the same items as CI Scott.

6. Harold Larkin, Field Investigator with the Office of the Medical Investigator, arrived on scene that evening and noted that the clothing found with the body appeared to be burnt, and that portions of the body also had the appearance of being burnt. Larkin noted a strong smell consistent with kerosene on the clothing found with the body. Larkin noticed that the left arm was missing along with the majority of the tissue on the upper torso. A search of the clothing on the body failed to produce any identifying documents, money, or other items of value.

7. On February 4, 2016, a court authorized search warrant was executed on the white

building. During the search, Agents seized the wood handled ax with red stains, a broom with red stains, several beer cans, a knife, a lamp, multiple items of charred fabric, and charred US currency.

8. On February 4, 2016, SA Roundy and CI Scott interviewed DODGE at his residence a short distance from Yazzie's residence. During the interview, DODGE said that he visited with Yazzie on February 1, 2016 around mid day and then returned again in the later afternoon or early evening hours. DODGE said that he frequently visited Yazzie, described as his uncle, at the beginning of each month when Yazzie would receive his social security check. DODGE said that on February 1, 2016, DODGE helped Yazzie start a fire and drank a few beers with him before leaving. DODGE said that when he left, Yazzie was on his bed and was not hurt. During the interview, DODGE asked the Agents if Yazzie's head had been chopped with an ax, a fact only discussed among law enforcement personnel prior to the interview with DODGE. Additionally, DODGE gave consent for the Agents to take clothing items worn by DODGE on February 1, 2016, while visiting Yazzie. The Agents noticed small dark spots on a pair of blue jeans similar in appearance to blood spots. The Agents also noted that DODGE had a cut on his hand and cuts and bruising on his face. DODGE claimed that he received the injuries while chopping wood for a family member.

9. On March 17, 2016, DODGE was interviewed again regarding his visit with Yazzie on or about February 1, 2016. When challenged by the interviewing Agents regarding how DODGE knew specific information not divulged to the public regarding the crime scene, DODGE provided several answers varying in consistency. DODGE also provided consent both verbally and in writing for the Agents to take DNA and a blood sample.

10. On March 29, 2016, DODGE voluntarily was interviewed again and was confronted

about inconsistencies in his previous statement. DODGE then confessed to getting into an altercation with Yazzie inside of Yazzie's residence on the night of February 1, 2016 due in part to Yazzie talking about DODGE's dead family members. DODGE said that Yazzie fell down and then refused DODGE's help to get back to his bed, resulting in an altercation. During the altercation, DODGE cut Yazzie's neck with an ax and then wrapped Yazzie's body in a blanket and drug him outside. Once outside, DODGE threw kerosene on the Yazzie and lit him on fire. DODGE left the residence and did not return to check up on Yazzie.

11. The incident under investigation occurred within the exterior boundaries of the Navajo Indian Reservation and the county of San Juan and both DODGE and Yazzie are Native Americans. Based upon the information received thus far, there is probable cause to believe that LEONARD DODGE violated Title 18, United States Code, Section 1111(a) and 1153, by committing second degree murder in Indian Country. Supervisory Assistant United States Attorney Kyle Nayback reviewed the affidavit and approved of the prosecution of DODGE for the above violations.

12. I swear that this information is true and correct to the best of my knowledge and belief.

Affiant
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me
on this 7 day of April, 2016.

B. Paul Briones
United States Magistrate Judge