IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                      Case No.: 16-CR-01697 WJ

LEONARD DODGE,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART DEFENDANT'S MOTION TO COMPEL PRODUCTION OF**
**POLYGRAPH DATA AND RELATED DOCUMENTS**

THIS MATTER comes before the Court following a hearing on October 23, 2017 upon Defendant's Motion to Compel Production of Polygraph Data and Related Documents, filed July 17, 2017 **(Doc. 38)**. Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is well-taken in part and shall be granted in part, and otherwise denied as set forth below.

### BACKGROUND

Defendant is charged with unlawfully killing John Doe on or about February 1, 2016 with malice aforethought by striking him with an axe, in violation of 18 U.S.C. §§1153 and 1111. According to the Complaint, on February 3, 2016, the partially-burned and eaten body of a man was discovered near Shiprock, New Mexico. Defendant is the victim's nephew and is purportedly the last person to see John Doe alive. The investigator's suspicions were raised when Defendant seemed to be familiar with the condition of the body, which had not been publicized.

Defendant seeks materials related to a polygraph examination of Defendant administered by Special Agent Jennifer Sullivan ("SA Sullivan"). Defendant subsequently confessed to the crime, and Defendant seems to be alleging that this confession is involuntary because it was coerced. Defendant was interviewed on three different occasions:

> (1) On February 4, 2016, Defendant was interviewed at his home by a Navajo Nation Criminal Investigator and FBI agent. Defendant was not given his *Miranda* rights, but he did give consent to search the items of clothing that were seized.[1]
>
> (2) On March 17, 2016, Defendant was interviewed at the Shiprock, New Mexico Criminal Investigations office of the Navajo Nation Police Department. Deft's Ex. 1. While he was given his *Miranda* rights, he was not advised of his rights with a Navajo translation. Deft's Ex. 2. Defendant also gave his consent to have 4 buccal swabs taken. Deft's Ex. 4.
>
> (3) On March 29, 2016, Defendant voluntarily came to the Shiprock Criminal Investigations office and underwent a polygraph examination conducted by SA Sullivan. He was again read his *Miranda* rights without a Navajo translation. Deft's Ex. 3. He also signed a Consent to an Interview with a Polygraph form that was not translated into Navajo. Deft's Ex. 5.

The polygraph pre-test and the administration of the test was audio and video recorded, as was Defendant's post-polygraph interview which occurred after SA Sullivan told Defendant that he had failed the polygraph. Defendant ultimately admitted to getting into an altercation with John Doe on February 1, 2016 and described how he struck Doe in the neck with an axe and dragged him outside and poured kerosene on him and a blanket on which Doe was lying, setting the blanket on fire.

Defendant argues that the requested information is material to the preparation of his defense, particularly because it is expected that the Government will attempt to introduce the confession at trial. On behalf of the defense polygraph expert, David Raskin, Ph.D., defense counsel seeks disclosure of the following:

---

[1] *See Miranda v. Arizona,* 384 U.S. 436 (1966).

(1) all electronic data in native format recorded by SA Sullivan during the administration of the polygraph;

(2) all polygraph examination worksheets (in handwritten and typed forms);

(3) all rough notes created by SA Sullivan pertaining to Mr. Dodge's polygraph; and

(4) the quality control report generated by SA Sullivan's supervisor and all communications and documents exchanged between SA Sullivan and her supervisor.

The Government has agreed to make the April 4, 2016 polygraph report available to the defense, but objects to disclosure as to the other items. The Government also objects to releasing the computerized polygraph files claiming that the FBI is not able to release them under the terms of their license to use the polygraph. Exs. 7 & 9. Moreover, the Government contends that even if SA Sullivan knowingly misrepresented to Defendant that he failed the polygraph examination, that deception without more, would not render his admission involuntary. *See Frazier v. Cupp,* 394 U.S. 731, 739 (1969) (fact that police in interrogation of defendant falsely told defendant that defendant's companion had confessed, though relevant, was insufficient to make otherwise voluntary confession by defendant inadmissible); *Lucero v. Kerby*, 133 F.3d 1299, 1311 (10th Cir. 1998) (although detective admitted to making false statements about fingerprint evidence found in victim's home, "such misrepresentations, without more, do not render an otherwise voluntary confession involuntary").

Defendant claims that it is necessary for Dr. Raskin to have this material made available to him in order to explain his testimony and to prepare evidentiary exhibits and that Rule 16's "inspect and copy" language mandates that the Government provide him with an electronic copy of the polygraph data in native format. Defendant rejects any argument that providing these materials is burdensome because the data at issue here can be transferred onto a CD or flash drive quickly, and notes that FBI agents conducting polygraphs electronically send that data to

3

their supervisors as a matter of course. Defendant further objects to requiring Dr. Raskin to have access to these materials only at the FBI office because Dr. Raskin would not have time to conduct a proper comprehensive analysis s and have the opportunity to educate defense counsel and impressions in a confidential manner. Defendant also objects to requiring Dr. Raskin to travel to New Mexico to review the data.

Defendant also contends that his confession was coerced, and that because Defendant has been diagnosed with borderline range of intellectual functioning, *see* Doc. 42-1, information regarding the administration of the polygraph is particularly relevant to whether Defendant had the capacity to fully comprehend either the questions that were being put to him or the consequences that might flow from his answers. *See United States v. McCullah,* 76 F.3d 1087, 1101 (10th Cir.1996) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 225–26 (1973)), *cert. denied,* 520 U.S. 1213 (1997) (the "lynchpin for voluntariness is the 'totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.'"). Defendant also contends that whether the confession was the result of deception (based on whether Defendant actually failed the polygraph test) is material to whether his confession was voluntary.

## DISCUSSION

**I.  Discovery**

Rule 16(a) of the Rules of Criminal Procedure provides that:

> the government must permit the defendant to inspect and to copy … the results or reports of any physical or mental examination and of any scientific test or experiment if … the item is within the government's possession, custody, or control … and … the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

Fed.R. Crim.P. 16(a)(1)(F) [emphasis added].Similarly, Rule 16 provides:

the government must permit the defendant to inspect and to copy … papers, documents, [or] data … if … the item is within the government's possession, custody, or control and … the item is material to preparing the defense; …the government intends to use the item in its case-in-chief at trial; or … the item was obtained from or belongs to the defendant.

Fed.R. Crim.P. 16(a)(1)(E) [emphasis added]. The "touchstone of materiality is a 'reasonable probability' of a different result," which exists "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Trammell v. McKune*, 485 F.3d 546, 551 (10th Cir. 2007) (citing *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

In seeking disclosure of the requested information, Defendant relies on a case where Chief Judge M. Christina Armijo ordered the Government to make available for inspection to defense and defense expert in that case, Charles Honts, Ph.D., "all electronic data in native format recorded by SA Sullivan during the taking of defendant's polygraph" and that the information be made available "under conditions that permit Defendant, his counsel and his polygraph expert to inspect the information and discuss it in private." *See U.S. v. Tennison,* 15 Cr 212 MCA (copy as exhibit in Doc. 41-1 in this case). Judge Armijo also ordered that, prior to the inspection of the electronic data, the Government make available documents *other* than rough notes reflecting SA Sullivan's scoring of the electronic data recorded during the defendant's polygraph examination." *Id.* Judge Armijo also afforded the Government the opportunity to submit a proposed protective order. According to Defendant, following Judge Armijo's Order, the Government on its own initiative, subsequently provided all the electronic data in native format recorded by SA Sullivan during the polygraph in an electronic file that was duplicated and transferred onto a CD. Doc. 42 at 5.

The Government notes that Judge Armijo's decision in the *Tennison* case is not controlling precedent, nor does it support the wide-ranging discovery Defendant seeks. While

5

Judge Armijo ordered the disclosure of some requested polygraph materials, she specifically did *not* order at that time disclosure of either the rough notes, the quality control report generated by SA Sullivan's supervisor or any communications and documents of exchanges between SA Sullivan and her supervisor.

The Court sees no point in belaboring what both parties have been through before. Defendant has represented to the Court that the Government, on its own initiative and subsequent to Judge Armijo's order in the *Tennison* case, duplicated the electronic polygraph data in its native format and provided it on a separate CD to Defendant even though the Order only provided that the Government make the information available to Defendant. It is not entirely clear to the Court why the Government is unwilling to provide Defendant's expert with a CD in this case as well although counsel for the United States at the October 23, 2017 hearing argued that furnishing this type of information on a CD could result in the scenario where some day in the not too distant future there's a YouTube video on how to pass a FBI polygraph examination.

The Court assumes that Defendant's description to be accurate as to the Government's voluntary production of the CD, and the Court hereby orders the Government to transfer all electronic data in native format recorded by SA Sullivan during the taking of Defendant's polygraph onto a CD and then provide this to Defendant's expert. Prior to producing this material to Defendant's, the Government may submit for the Court's approval a protective order which would be binding not only on the parties, but on any experts who would be receiving the material.

The Court notes that Judge Armijo's order in the *Tennison* case does not require that the Government provide Defendant's expert or Defense Counsel with the CD containing the polygraph data and the Court reads Judge Armijo's order as requiring that the Government make

the polygraph data available for inspection. However, it is undisputed that in the *Tennison* case, the Government did produce the subject polygraph data on a CD that was made available to Defendant Tennison's counsel and/or polygraph expert. The Court further notes that AUSA Kyle Nayback was counsel for the United States in *Tennison, so* if the Government wishes to present argument or testimony which distinguishes this case from the *Tennison* case in order to explain why the Government should not be compelled to provide a CD notwithstanding the fact that it was provided in the other case, the Court will allow such supplementation. Should the Government present this additional information, it should be submitted to the Court **within TWO (2) WEEKS** of the entry of this Order, and the Court would then set a hearing to reconsider that portion of its ruling requiring that the polygraph data in its native format be produced to Defendant on a separate CD.

As to the other information, the Government expresses a concern that "widespread dissemination of the information could cause significant damage to the FBI polygraph program." Doc. 41 at 6. Defendant assures the Court that the Government's concerns are unfounded, as both Dr. Raskin and Dr. Honts are instructors for the FBI and the software that was used for Defendant's polygraph is also available to private as well as government polygraphers. Doc. 42 at 4, n.2. Defendant also emphasizes, through the Declarations of both Dr. Honts and Dr. Raskin, that reviewing and analyzing the electronic data at the FBI offices is a "less than satisfactory approach" since there is insufficient time and ability for an expert to conduct a proper and comprehensive analysis. Doc. 38-10, ¶9; Doc. 42-2, ¶13. These two issues—concern about the integrity of the FBI program and the inconvenience of requiring an expert to travel to inspect documents—are moot as to the requested electronically recorded polygraph data since the Court is ordering the Government to provide Defendant with a CD containing that

information, and the Government is being given the opportunity to have a protective order in place.

The Court does find that documents reflecting SA Sullivan's scoring of the electronic data recorded during Defendant's polygraph examination are pertinent under the requirements of Rule 16, as this material may afford some insight into the basis for the polygraph results. Therefore, the Government is ordered to make this information available to Defendant under conditions that permit Defendant, his counsel and his polygraph expert to inspect the information and discuss it in private. These conditions are the same as those imposed by Judge Armijo in the *Tennison* case, where the defense expert in that case would also have been expected to travel to view the documents, since his curriculum vitae state that he is from Boise, Idaho. *See* Doc. 42-2 at 5.

Finally, the Court finds at this time no reason to require the Government to completely open up to Defendant's counsel and expert witnesses the complete FBI file containing the rough notes, the quality control report generated by SA Sullivan's supervisor and documents of exchanges between SA Sullivan and her supervisor, and so these materials need not be disclosed or made available to Defendant.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE